UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-963 JGB (SPx)** | Date | March 4, 2021 |
|---|---|---|---|
| Title | *Kingray Inc. v. Farmers Group Inc., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendant's Motion to Dismiss (Dkt. No. 61); and (2) VACATING the March 8, 2021 Hearing (IN CHAMBERS)

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Truck Insurance Exchange. ("Motion," Dkt. No. 61.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion. The March 8, 2021 hearing is VACATED.

## I. BACKGROUND

This is a Covid-19-related business insurance dispute. Plaintiffs are businesses; Defendant is an insurer that has determined Plaintiffs' losses are not covered. On May 4, 2020, Plaintiff Kingray Inc. ("Kingray") filed a complaint against Defendants Farmers Group Inc., Farmers Insurance Company, Inc., and Truck Insurance Exchange. ("Complaint," Dkt. No. 1.) On September 28, 2020, Kingray and Nora's Style Salon, Inc. ("Nora's") filed a First Amended Complaint against Defendant Truck Insurance Exchange. ("FAC," Dkt. No. 50.) The FAC is a class action for declaratory relief and breach of contract arising out of Plaintiffs' insurance with Defendant. (FAC ¶ 1.)

On October 21, 2020, Defendant filed this Motion.  (See Motion.)  Plaintiffs filed their Opposition on November 11, 2020.  ("Opposition," Dkt. No. 63.)  Defendant replied on November 23, 2020.  ("Reply," Dkt. No. 65.)

Both parties have filed significant supplemental authorities.  In support of the Motion, Defendant has filed:

- Declaration of Michael Maddigan (Dkt. No. 61-2);
- Excerpts from Plaintiffs' respective insurance policies ("Nora's Policy," Dkt. No. 61-3; "Kingray Policy," Dkt. No. 61-10);[1]
- April 23, 2020 Bulletin issued by the California Insurance Commissioner (Dkt. No. 61-11);[2]
- Notice pursuant to Local Rule 83-1.3.1 of related actions pending before courts in this District (Dkt. No. 64);
- Orders from other courts interpreting Covid-19-related insurance disputes, including:
    o Social Life Magazine, Inc. v. Sentinel Ins. Co., No. 1:20-cv-03311-VEC, Dkt. No. 24-1 (S.D.N.Y. May 14, 2020) (Dkt. No. 61-4);
    o Gavrilides Mgmt. Co. LLC, et al. v. Michigan Ins. Co., No. 20-258-CB (Mich. Cir. Ct. July 21, 2020) (Dkt. No. 61-5);
    o Rose's 1, LLC, et al. v. Erie Ins. Exch., No. 2020 CA 002424 B (D.C. Super. Ct., Aug. 6, 2020) (Dkt. No. 61-6);
    o Travelers Casualty Ins. Co. of America v. Geragos and Geragos, No. 2:20-cv-03619-PSG-E (C.D. Cal. Oct. 19, 2020) (Dkt. No. 61-7);
    o Musso & Frank Grill Co. Inc. v. Mitsui Sumitomo Ins. USA Inc., No. 20STCV16681 (Super. Ct. Cal. Nov. 9, 2020) (Dkt. No. 65-2);
    o DAB Dental PLLC v. Main St. Am. Prot. Ins. Co., No. 20-CA-5504, at *6 (Fla. Cir. Ct. Nov. 10, 2020) (Dkt. No. 65-3);
    o Boxed Food Co., LLC v. Cal. Capital Ins. Co., No. 20-cv-04571-CRB, 2020 WL 6271021 (N.D. Cal. Oct. 27, 2020) (Dkt. No. 69-1);
    o Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co., No. 20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) (Dkt. No. 69-2);
    o Long Affair Carpet and Rug Inc. v. Liberty Mut. Ins. Co., No. SACV 20-01713-CJC (JDEx), 2020 WL 6865774 (C.D. Cal. Nov. 12, 2020) (Dkt. No. 69-3);

---

[1] Defendant requests judicial notice of these insurance policies.  The Court finds that the policies are incorporated by reference into the FAC and grants Defendant's request.  See Glenbrook Capital Ltd. P'ship v. Kuo, 525 F. Supp. 2d 1130, 1137 (N.D. Cal. 2007) (judicial notice of the text of a document referenced in a Complaint is proper under the doctrine of incorporation by reference).

[2] Defendant also requests judicial notice of the contents of this bulletin published by the California Insurance Commission.  The contents of government-published websites "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201(b)(2).  The Court grants judicial notice here too.

- S. Fla. ENT Assocs. Inc. v. Hartford Fire Ins. Co., No. 20-23677, 2020 WL 6864560 (S.D. Fla. Nov. 13, 2020) (Dkt. No. 69-4);
- BBMS, LLC v. Continental Cas. Co., No. 20-0353-CV-W-BP, 2020 WL 7260035 (W.D. Mo. Nov. 30, 2020) (Dkt. No. 69-5);
- Whiskey River on Vintage Inc. et al. v. Illinois Cas. Co., No. 4:20-cv-185-JAJ, 2020 WL 7258575 (S.D. Iowa Nov. 30, 2020) (Dkt. No. 69-6);
- Zwillo V. Corp. v. Lexington Ins. Co., No. 4:20-00339, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) (Dkt. No. 69-7);
- 4431, Inc. v. Cincinnati Ins. Co., No. 5:20-cv-04396, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020) (Dkt. No. 69-8);
- Promotional Headwear Int'l v. Cincinnati Ins. Co., No. 20-cv-2211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020) (Dkt. No. 69-9);
- Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co., No. CV 20-4647-GW-MAAX, 2020 WL 7350413 (C.D. Cal. Dec. 3, 2020) (Dkt. No. 69-10);
- Hajer v. Ohio Sec. Ins. Co., No. 6:20-CV-00283, 2020 WL 7211636 (E.D. Tex. Dec. 7, 2020) (Dkt. No. 69-11);
- HealthNOW Med. Ctr. v. State Farm Gen. Ins. Co., No. 20-4340, 2020 WL 7260055 (N.D. Cal. Dec. 10, 2020) (Dkt. No. 69-12);
- Michael Cetta, Inc. v. Admiral Indem. Co., 20 Civ. 4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) (Dkt. No. 69-13);
- Terry Black's Barbecue LLC et al. v. State Auto. Mut. Ins. Co. et al., No. 1:20-CV-665-RP, 2020 WL 7351246 (W.D. Tex. Dec. 14, 2020) (Dkt. No. 69-14);
- Kirsch v. Aspen Am. Ins. Co., No. 20-11930, 2020 WL 7338570 (E.D. Mich. Dec. 14, 2020) (Dkt. No. 69-15);
- 10012 Holdings, Inc. v. Sentinel Ins. Co. Ltd., No. 20 Civ. 4471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) (Dkt. No. 69-16);
- Prime Time Sports Grill, Inc. v. Dtw 1991 Underwriting Ltd., No. 8:20-cv-771-T-36JSS, 2020 WL 7398646 (M.D. Fla. Dec. 17, 2020) (Dkt. No. 69-17);
- Mortar and Pestle Corp. v. Atain Specialty Ins. Co., No. 20-cv-03461-MMC, 2020 WL 7495180 (N.D. Cal. Dec. 21, 2020) (Dkt. No. 69-18);
- Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co., No. 5:20-cv-04265-BLF, 2020 WL 7696080 (N.D. Cal. Dec. 28, 2020) (Dkt. No. 69-19);
- BA LAX, LLC et al. v. Hartford Fire Ins. Co., No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248, at *1 (C.D. Cal., Jan. 12, 2021) (Dkt. No. 69-20); and
- Other cases in support (See Dkt. Nos. 75-1–75-34; 81-1–81-13).

In support of their Opposition, Plaintiffs have filed:

- Orders and transcripts from other courts interpreting Covid-19-related insurance disputes, including:
    - N. State Deli LLC v. Cincinnati Ins. Co., No. 20-cvs-02569 (N.C. Super. Ct., Durham Cty. Oct. 9, 2020) (Dkt. No. 63-2);

- o  Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London, No. 20-CVS-02569 (Pa. Ct. Com. Pl., Philadelphia Cnty. Oct. 26, 2020) (Dkt. No. 63-3);
- o  Optical Servs. USA v. Franklin Mut. Ins. Co., No. BER-L-3681-20 (N.J. Super. Ct. Aug. 13, 2020) (Dkt. Nos. 63-4, 63-5);
- o  Ridley Park Fitness, LLC v. Phil. Indem. Ins. Co., No. 01093 (Pa. Dist. Ct. Aug. 31, 2020) (Dkt. No. 63-6);
- o  Francois Inc. v. Cincinnati Ins. Co., No. 20CV201416 (Oh. Cnty. Ct. Sept. 29, 2020) (Dkt. No. 63-7);
- o  Elegant Massage, LLC v. State Farm Mut. Auto, Ins. Co., No. 2:20-cv-00265-RAJ-LRL (E.D. Va. Dec. 9, 2020) (Dkt. No. 67-1);
- o  Henderson Rd. Rest. Sys., Inc. v. Zurich Am. Ins. Co., No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021) (Dkt. No. 68-1);
- o  Goodwill Indus. of Orange Cnty., Cal. v. Philadelphia Indem. Ins. Co., No. 30-2020-01169032-CU-IC-CXC, slip op. (Cal. Super. Ct. Jan. 28, 2021) (Dkt. No. 71-1);
- o  Pez Seafood DTLA, LLC v. Travelers Indem. Co., No. CV-20-4699-DMG-GJSX, 2021 WL 234355 (C.D. Cal. Jan. 20, 2021) (Dkt. No. 71-2); and
- o  Other cases in support (See Dkt. Nos. 74-1; 77-1; 78-1; 80-1.)

## II.   FACTUAL ALLEGATONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this motion.

Plaintiff Nora's is a corporation organized under New York law with its principal place of business in Tappan, New York. (FAC ¶ 11.) Nora's operates a beauty salon. (Id.) Plaintiff Kingray is a California corporation with its principal place of business located in La Quinta, California. (Id. ¶ 10.) Kingray operates a sports bar and grill. (Id.) Defendant Truck is an insurance exchange organized under California law with its principal place of business located in Woodland Hills, California. (Id. ¶ 11.) Truck is a subsidiary of Farmer's Group Inc. d/b/a Farmers Underwriters Association ("Farmers") and is duly qualified and licensed to issue insurance. (Id.)

Defendant issued the Farmers Policy No. 60669-00-43 to Kingray for the policy period of October 2, 2019, through October 2, 2020 ("Kingray's Policy"), which is attached to the FAC as Exhibit A. (Id. ¶ 13.) Defendant also issued a policy to Nora's, which Nora's renewed on or about March 11, 2020. (Id.) Plaintiffs have attached a copy of Nora's 2017-18 policy, "identical in all material respects to the operative policy," to the FAC as Exhibit B. (Id.)

Covid-19 is a deadly global pandemic, national emergency, and unprecedented crisis. (Id. ¶¶ 2-4.)[3] In response to Covid-19, many state and local governments entered civil authority orders suspending or severely curtailing business operations of non-essential businesses that interact with the public. (Id. ¶ 5.) To date, almost all states within the United States, and many counties, cities, and municipalities have issued some sort of "stay-at-home" or "shelter-in-place" order requiring some businesses to close. (Id.)

Defendant's insurance policies issued to Plaintiffs and all putative class members are standard "all risk" commercial property policies that cover loss or damage to the covered premises resulting from all risks other than those expressly excluded. (Id. ¶ 49.) Most businesses choose to purchase all risk commercial property insurance to protect themselves against losses from unforeseen catastrophic events. (Id. ¶ 7.) In exchange for premium payments, insurance policies promise to indemnify policyholders for actual business losses incurred when business operations are involuntarily suspended. (Id.) Such coverage is commonly known as "business interruption coverage" and is standard in most all risk commercial property insurance policies, including those purchased by Plaintiffs and the putative class members. (Id.) Defendant, and most insurance companies who have issued all-risk commercial property insurance policies with business interruption coverage, is denying claims for business income losses arising out of the Covid-19 pandemic. (Id. ¶ 8.)

In accordance with the all risk nature of Plaintiffs' policies, Defendant agreed to pay for all losses caused by a "Covered Cause of Loss," defined as any "risks of direct physical loss" unless the loss is excluded or limited in the policy. (Id. ¶ 53.)

Kingray's policy includes a "Businessowners Special Property Coverage Form," Form BP 00 02 01 97, which provides "Business Income" coverage as follows: "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the 'period of restoration'. The suspension **must be caused by direct physical loss of or damage to property** at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." (Id. ¶ 55, emphasis added.)

The Nora's policy similarly provides coverage for "Business Income" as follows: "We will pay for the actual loss of 'business income' you sustain due to the necessary suspension of 'operations' during the 'period of restoration,' but not to exceed 12 consecutive months. The suspension **must be caused by direct physical loss of or damage to property** at the 'described premises,' including personal property in the open, or in a vehicle, within 1000 feet, caused by or resulting from a Covered Cause of Loss." (Id. ¶ 56, emphasis added.)

---

[3] Plaintiffs offer an exceptionally thorough account of the science behind the Covid-19 pandemic in the FAC, including the relevant facts that Covid-19 is a viral disease commonly transmitted via human-to-human contact which may also spread through fomite transmission. (See FAC ¶¶ 22-34.) Plaintiffs also thoroughly detail federal and state response to Covid-19. (Id. ¶¶ 34-48.)

In addition to "Business Income" coverage, the Nora's policy also provides "Civil Authority" coverage for "the actual loss of 'business income' you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the 'described premises' due to **direct physical loss of or damage to property, other than at the 'described premises,'** caused by or resulting from any Covered Cause of Loss . . . . This coverage begins 'after the action by the civil authority for a period of up to three consecutive weeks after coverage begins.'" (Id. ¶ 64, emphasis added.)

The Nora's policy also covers business income from dependent properties, which gives coverage where loss is caused by the necessary suspension of operations caused by direct physical loss of or damage by a Covered Cause of Loss to "dependent property" at a premises the policy owner does not own, lease, or operate. (Id. ¶ 66.) "Dependent Property" means "premises operated by others on whom you depend to: 1. Deliver materials or services to you, or to others for your account (not including water, communication or power supply services); 2. Accept your products of services; 3. Manufacture products for delivery to your customers under contract of sale; or 4. Attract customers to your business." (Id. ¶ 67.)

Both of Plaintiffs' policies define "property damage" as: "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (Id. ¶ 68.)

Plaintiffs allege that as a result of the Covid-19 civil authority orders, they and their putative class have suffered "direct physical loss of and damage to" their properties. (Id. ¶ 69.) They have been unable to use their properties for their intended purpose and have been forced to suspend and curtail business operations, rendering their properties less useful and profitable. (Id.) Both Plaintiffs have physically altered their floor plans to comply with various Covid-19 shutdown orders, which impose limited capacity and require modifications like plexiglass shields, removing tables and chairs, and hand sanitizing stations. (Id. ¶¶ 70-71.)

Plaintiffs compare the unsafe conditions of Covid-19 to an ammonia or gas leak. (Id. ¶ 74.) They also put forth a number of alternative theories as to the mechanisms by which Covid-19 has caused them to suffer "a direct physical loss of or damage to" their properties, including that shutdown orders deny access to the properties and render access to the properties uninhabitable. (Id. ¶¶ 77-79.)

Critically, Plaintiff Kingray's policy contains certain exclusions that do not appear in the Nora's policy. (Id. ¶ 80.) Kingray's policy contains a provision which excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Id. at 22 n.26.)

Plaintiffs both seek to represent a Nationwide class, defined as: "All persons and entities who have entered into a standard commercial property insurance policy with Truck to insure

property in the United States, where such policy provides for business income loss and extra expense coverage and does not exclude coverage for pandemics, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order." (Id. at 99.)

Nora's seeks to represent a subclass defined as: "All persons and entities who have entered into a standard commercial property insurance policy with Truck to insure property in the United States, where such policy provides for business income loss and extra expense coverage and contains no exclusion for mold, microorganisms, viruses, bacteria, and/or fungi, and who have suffered losses due to the presence of COVID-19 at the premises and/or measures put in place by a COVID-19 Civil Authority Order." (Id.)

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.  DISCUSSION

As Defendant articulates in the Motion, interpretation of insurance policy is a question of state law, governed by the normal rules of contract interpretation.  See Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995).  California substantive law applies to the claims asserted by Kingray; New York substantive law applies to the claims asserted by Nora's.  See State Farm Mut. Auto. Ins. Co. v. Super. Ct., 114 Cal. App. 4th 434, 447 (2003) (rights created by an insurance policy "are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy[.]") (citations omitted).  The goal of contract interpretation under both New York and California law is to "give effect to the mutual intention of the parties," and if "contractual language is clear and explicit, it governs."  Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1264 (1992); see also Newman Myers Kreines Gross Harris P.C. v. Great Northern Ins. Co., 17 F. Supp. 3d 323, 327 (S.D.N.Y. 2014) (internal citations omitted) (applying New York law).  Both parties agree that California and New York insurance law are substantially the same for the purposes of this case.  (Opposition at 2 n.2, citing Motion at 9 n.3.)

Plaintiffs' claim requires interpretation of the phrase "**caused by direct physical loss of or damage to property**".  (Motion, Opposition.)  If the Covid-19 pandemic and/or mandated business closures arising from the pandemic are "direct physical loss of or damage to property," Plaintiffs have adequately pleaded claims against Defendant.  Plaintiffs' two articulated possibilities are that either the coronavirus itself has caused "direct physical loss of or damage to property" or, in the alternative, that state-mandated closures and new social distancing rules count as such direct physical loss or damage.  (FAC.)

**A.  Plaintiff Kingray**

Plaintiff Kingray, along with thousands of other small businesses across the United States, faces an impossible situation unprecedented in living memory.  Its plight is serious and real.  Unfortunately, its insurance with Defendant contains a virus exclusion that precludes its claims.  (FAC ¶ 80.)  The terms of an insurance policy must be construed in their "ordinary and popular sense," and, if the policy language is "clear and explicit," it governs.  Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115 (1999); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.")

The Kingray policy excludes "loss or damage caused by **or resulting from** any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (Id. at 22 n.26, emphasis added.)  This plainly defeats Plaintiffs' theory that the coronavirus itself triggers Kingray's insurance coverage.  And while it is debatable whether state-mandated closures and business modifications constitute damage "caused by" a virus, it is indisputable that such closures and modifications "result[] from" a virus.  If there were no coronavirus, there would be no Covid-19 pandemic, no Covid-19-related shutdowns, and no need for Kingray to close, operate at a limited capacity, or modify the floor plan of its sports bar.  This

causal chain is straightforward and unbroken.  The relief Kingray needs will not come from its insurance policy with Defendant.  Its claims must be dismissed.

**B. Plaintiff Nora's**

In contrast to Kingray, the Nora's insurance policy with Defendant lacks a virus exclusion, forcing the interpretation of the central clause "direct physical loss of or damage to property."  Any provision in the Nora's policy which might trigger coverage—including the civil authority provision—contains this phrase.  Defendant argues that under New York law, the phrase "direct physical loss or damage" "unambiguously, requires some form of actual, physical damage to the insured premises" (Motion 12, quoting Newman Myers Kreines Gross Harris, P.C., 17 F. Supp. 3d at 331–332.)  Defendant also argues that the presence of the word "physical" precludes any claim for intangible changes to a property, such as the potential presence of a virus, or order which disrupt business but do not change the property, i.e., "stay at home" orders in question here.  (Motion 13, citing Iannucci v. Allstate Ins. Co., 354 F. Supp. 3d 125, 140 (N.D.N.Y., 2018) ("'The requirement that the loss be 'physical,' . . . is widely held to . . . preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'") (quoting 10A Couch on Ins. § 148:46).)

Nora's, for its part, argues that because its policy was an "all risk" policy, is it entitled to recovery "for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." (Opposition at 3, quoting C.H. Leavell & Co. v. Fireman's Fund Ins. Co., 372 F.2d 784, 787 (9th Cir. 1967).)  Nora's further argues that the various applicable "stay at home" orders constitute direct physical loss of property because they rendered the property unusable, useless, and uninhabitable.  (Opposition at 5.)  However, the general category of insurance offered does not answer the question of what "direct physical loss of or damage to property" means.

Nora's most compelling argument surrounds the disjunctive "or."  It argues that "or" demonstrates that "physical loss" is different from "physical damage." (Opposition at 6.)  This is obviously true.  But it is odd that Nora's separates the phrase "direct physical loss of or damage to property" into "direct physical loss" and "physical damage."  Why would the word "direct" modify only "loss" but "physical" modify both "loss" and "damage"?  The most natural reading of the phrase is that Nora's is insured for direct physical loss of its property and also insured for direct physical damage to its property.

Neither the virus nor its accompanying stay-at-home orders caused "direct physical damage to" the property of Nora's.  The property is still standing in essentially the same condition as it was before the pandemic.  The ordinary meaning of "direct physical damage" to property requires physical destruction—partial or complete—and cannot be abstract or attenuated.

However, it is possible that either the coronavirus which causes Covid-19 or New York's "stay at home" orders caused "direct physical loss" to Nora's. At various points during the pandemic, Nora's was forced to shutter, rendering its property unusable for its only purpose—the operation of a business. If Plaintiff was not allowed to operate or invite others onto its property, it was disposed in some way. Dispossession is a form of loss.

The next question is whether that loss—dispossession—constitutes a "direct physical loss." Plaintiff compellingly contends that under both California and New York law, physical alteration to property is not necessary to constitute a physical loss. (Opposition at 9.) By way of example, policyholders in Hughes v. Potomac Ins. Co. of D.C., purchased a policy that provided coverage for "all risks of physical loss of and damage to their dwelling[.]" 199 Cal. App. 2d 239, 242 (1962), abrogated on other grounds, La Bato v. State Farm Fire & Cas. Co., 215 Cal. App. 3d 336 (1989). A landslide pushed the insured home off a steep cliff, moving it, but the house was undamaged. The California Court of Appeals found that "common sense" required coverage because the house had been rendered unusable to its owners, even though its paint was intact and its walls still adhered to one another. (Id. at 248-49.)

Additionally, as Plaintiff argues, Defendant's interpretation of the contract requires "loss" to share a meaning with "damage," which violates the canon that every word be given meaning. (Opposition at 7.) See also Nautilus Grp., Inc. v. Allianz Global Risks US, 2012 WL 760940, at *7 (W.D. Wash. Mar. 8, 2012) ("[I]f 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous. The fact that they are both included in the grant of coverage evidences an understanding that physical loss means something other than damage.")

If the contract between Nora's and Defendant specified only that "direct physical damage to" property warranted coverage, it would be without a claim. However, it is plausible that "direct physical loss of" property includes physical dispossession because of dangerous conditions (a virus in the air) or a civil authority order requiring Nora's to close.

## V. CONCLUSION

For the reasons above, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion. Plaintiff Kingray's claims are DISMISSED WITH PREJUDICE. The March 8, 2021 hearing is VACATED.

**IT IS SO ORDERED.**